**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**MDD_CDAChambers@mdd.uscourts.gov**

February 2, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Willie B. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-307-CDA

Dear Counsel:

On February 3, 2023, Plaintiff Willie B. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for benefits. ECF 1. This case was referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 7) and the parties' briefs (ECFs 10 and 13). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the SSA's decision and REMAND the case to the SSA for further consideration. This letter explains why.

### I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on April 23, 2020, alleging a disability onset of April 19, 2019. Tr. 257–61. Plaintiff's claim was denied initially and on reconsideration. Tr. 104–07, 113–18. On April 19, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38–63. Following the hearing, on June 29, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 7–32. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

### II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on February 3, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, the Court substitutes Commissioner O'Malley as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since April 19, 2019, the alleged onset date." Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "obesity, residual effects of left knee surgery, and osteoarthritis of the bilateral knees." *Id*. The ALJ also found that Plaintiff suffered from the non-severe impairments of "hypertension," "hydrocele excision," "gout," "hyperlipidemia," "major depressive disorder," "generalized anxiety disorder," "alcohol use disorder," "apnea," and "bilateral leg cellulitis." *Id*. At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 14. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.

Tr. 15–16. The ALJ determined that Plaintiff could perform past relevant work "in a composite job as a receptionist and data entry clerk." Tr. 25. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

### III. LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's findings and whether the decision was reached by applying the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id*. In conducting the "substantial evidence" inquiry, the Court considers whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff raises two arguments on appeal. First, he contends that the ALJ failed to properly evaluate the opinions of several treating physicians, which allegedly resulted in an RFC that was unsupported by substantial evidence. ECF 10, at 10–19. Second, he avers that the ALJ failed to properly evaluate his subjective complaints and daily activities. *Id.* at 19–22. Defendant counters that: (1) substantial evidence supported the RFC and the ALJ's evaluation of the opinions of Plaintiff's treating physicians and (2) the ALJ properly evaluated Plaintiff's subjective-symptom testimony. ECF 13, at 4–17.

Plaintiff's second argument, as it pertains to his activities of daily living, is dispositive of this matter. Plaintiff contends that the ALJ "improperly correlated [Plaintiff's] ability to perform sporadic and limited daily activities with [his] ability to work." ECF 10, at 22. More specifically, he avers that "the ALJ erred when [they] improperly assumed" that Plaintiff's ability to "do some light household chores, cook simple meals, watch television, [and] drive a car" were inconsistent with Plaintiff's statements regarding the limiting effects of his symptoms. *Id.* at 18–19.

An ALJ evaluates a claimant's subjective symptoms using a two-part test. *See Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* (citing 20 C.F.R. § 404.1529(b)). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1529(c)). In doing so, the ALJ considers the daily activities that the claimant can perform. *See* 20 C.F.R. § 404.1529(c)(3)(i).

In assessing a claimant's daily activities, an ALJ "may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [they] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). Additionally, an ALJ may not reject a claimant's subjective complaints solely because the claimant can perform the most basic of daily activities. *See, e.g.*, *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) (finding that an ALJ improperly determined that a claimant could "do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping"); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding an ALJ's adverse credibility judgment against a claimant who loaded dishwasher and folded clothes to be improper), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting an ALJ's finding that, because a claimant could do housework "at her own pace," she was not disabled).

Here, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but also found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" were "not entirely consistent with" other evidence. Tr. 19. The ALJ further noted that Plaintiff's "testimony and reports of daily activities . . . do not clearly support a finding that his functioning is reduced below the level indicated in the [RFC]." *Id.* With respect to Plaintiff's daily activities, the ALJ provided the following analysis:

*Willie B. v. O'Malley*
Civil No. 23-307-CDA
February 2, 2024
Page 4

>   In a Function Report dated August 25, 2020, the claimant reported his conditions affect his ability to lift, squat, bend, stand, walk, kneel, and climb stairs. He reported he can walk 2 blocks before needing to stop and rest for 5-15 minutes. The claimant reported his conditions do not affect his sleep. The claimant reported he has a good attention span. He reported he finishes what he starts. The claimant reported he is good at following written and spoken instructions. He reported he gets along well with authority figures. The claimant reported he puts a positive spin on handling changes, and that most change is good for him. He reported he has no problem performing personal care including bathing, grooming, and dressing. The claimant reported he does not need reminders to take care of personal needs and grooming, take medicine, and to go places. He reported he prepares meals daily. The claimant reported he performs household chores including cooking, cleaning, and ironing. He reported he gets around by driving a vehicle. The claimant reported he shops in stores and by computer. He reported he can pay bills, count change, handle a savings account, and use a checkbook. The claimant reported he reads and watches television daily. He reported he interacts with other[s] through phone calls daily and in-person weekly or biweekly.

Tr. 16; *see also* Tr. 17 (noting that Plaintiff "showers independently" and "makes his own breakfast"). The ALJ determined that Plaintiff's ability to perform these activities: (1) "indicate[s] [that he] has the continued ability to function at a greater degree than he alleges" and (2) "supports lesser exertional, postural, and environmental limitations." Tr. 20, 24.

Because an "inability to sustain full-time work due to pain and other symptoms is often consistent with [an] ability to carry out daily activities," an ALJ must explain how a claimant's "particular activities" demonstrate an ability to "persist through an eight-hour workday." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 100-01 (4th Cir. 2020) (quoting *Brown v. Comm'r, Soc. Sec. Admin*, 873 F.3d 251, 263 (4th Cir. 2017)). Here, instead of explaining how Plaintiff's activities demonstrated his ability to persist through an eight-hour workday, the ALJ simply concluded that Plaintiff's activities were supportive of the RFC assessed in this case. *See* Tr. 24. But most of the activities described by the ALJ are undemanding in nature, with some requiring only minimal attention (i.e., watching television, reading, making phone calls, and handling personal finances) and others requiring only a modicum of physical exertion (i.e., driving, shopping, cooking, ironing, and self-care). *See* Tr. 16. "[A]bsent a more detailed explanation" that sheds light on the mental and physical demands of these activities, it is unclear how Plaintiff's ability to perform them evinces a mental and physical capacity to sustain full-time work. *James L. v. Kijakazi*, No. BAH-23-1137, 2023 WL 5804621, at *4 (D. Md. Sept. 6, 2023) (determining that an ALJ erred by determining that "driving, shopping, doing laundry, and caring for oneself" were incompatible with a finding of disability).

Additionally, the ALJ failed to consider "the extent" to which Plaintiff can perform his daily activities. *Woods*, 888 F.3d at 694 (italics omitted). Plaintiff stated in an August 2021 function report that he does not "attend [to] any" of his daily activities when he is experiencing "severe pain." Tr. 352. In the same report, Plaintiff noted that he "need[s] assistance" from others

to get to the places he visits on a regular basis and that it takes him "longer" to bathe, get dressed, and prepare meals due to his pain. Tr. 349, 352. The ALJ made no mention of these qualifying statements. *See* Tr. 7–32. The ALJ also failed to note the extent of Plaintiff's housekeeping. Plaintiff indicated in an August 2020 function report that he cleans weekly, irons only when necessary, and performs both of these tasks for a maximum of one hour. Tr. 306. Also, while the ALJ noted that Plaintiff "shops in stores," Tr. 16, Plaintiff's function report makes clear that he does so for a maximum of one hour, *see* Tr. 307. The ALJ's decision lacks any acknowledgment of these qualifying statements. Perhaps more importantly, the ALJ failed to acknowledge Plaintiff's testimony that, since October 2019, he has required the use of a walking cane to engage in each of his daily tasks.[3] *See* Tr. 310, 354.

While the ALJ need not have accepted these qualifying statements at face value, the ALJ was, nonetheless, required to evaluate them. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (holding that an ALJ erred by "disregard[ing]" a claimant's "qualification of his activity levels" and explaining that an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because the ALJ failed to consider Plaintiff's qualifying statements, their decision lacks "an accurate and logical bridge" from the evidence to the decision's conclusions. *Arakas*, 983 F.3d at 100 (holding that substantial evidence did not support an ALJ's conclusion that a claimant's subjective complaints were inconsistent with her daily activities because the ALJ "selectively cited evidence concerning tasks which [the claimant] was capable of performing" and "improperly disregarded" the claimant's qualifying statements).

Because the ALJ's decision lacks the support of substantial evidence, the Court will remand Plaintiff's case to the SSA. On remand, the ALJ must conduct a more thorough analysis of whether the type and extent of the activities that Plaintiff can perform suggest an ability to "engage in full-time work on a sustained basis." *Id.* at 101. In remanding for further analysis, the Court expresses no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct. Because the case is being remanded on these grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and, if warranted, to adjust their decision accordingly.

---

[3] The ALJ also failed to resolve an inconsistency between Plaintiff's 2020 function report and his 2021 function report. The ALJ relied on Plaintiff's testimony that he "puts a positive spin on handling changes, and that most change is good for him." Tr. 16. While the 2020 function report supports this observation, *see* Tr. 310, the 2021 function report states that Plaintiff's ability to handle stress is "not good at all" and that it is "very difficult" for Plaintiff to handle changes in routine, Tr. 354. The ALJ made no reference to the testimony in the 2021 function report. *See* Tr. 7–32. This omission constitutes error because an ALJ is required to "explain how any material inconsistencies . . . in the evidence . . . were considered and resolved." Social Security Ruling 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

*Willie B. v. O'Malley*
Civil No. 23-307-CDA
February 2, 2024
Page 6

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g).  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge